Revised August 9, 2001

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 00-20964
Summary Calendar
_____


OPE INTERNATIONAL LP,

                                    Plaintiff-Appellee,


VERSUS


CHET MORRISON CONTRACTORS, INCORPORATED,

                                    Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Texas
_____


August 1, 2001

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:

     Appellant Chet Morrison Contractors argues that the district court erred by compelling arbitration pursuant to an arbitration agreement with OPE International.  Appellant claims that section 9:2779 of the Louisiana Revised Statutes nullifies the terms of the parties' agreement that require the parties to submit to

arbitration in Texas and to resolve their dispute under Texas law. *See* LA. REV. STAT. ANN. § 9:2779. We must determine whether the Federal Arbitration Act preempts the Louisiana statute.

## I.

On January 23, 1998, OPE International ("OPE"), a Texas limited partnership with its principal place of business in Houston, Texas, and Chet Morrison Contractors ("CMC"), a Louisiana corporation with its principal place of business in Houma, Louisiana, entered into a subcontract for CMC to fabricate a deck structure for OPE to use in extracting hydrocarbons in the Gulf of Mexico. The subcontract contained an arbitration clause selecting a Houston forum.[1] The subcontract also contained (1) a choice-of-law provision requiring the application of Texas law,[2] (2) a stipulation that portions of the subcontract work were to be

---

[1] Clause 21.2 states in pertinent part:
...if any question, dispute or difference shall arise between CONTRACTOR and SUBCONTRACTOR, and the parties cannot mutually agree on a resolution thereof, then the Parties agree that such question, dispute or difference shall be finally settled by arbitration in Houston, Texas, or in such other location as may be mutually agreed, in accordance with the Construction Industry Rule of the American Arbitration Association with a single arbitrator.

[2] Clause 23.5 states:
ALL MATTERS RELATING TO THE VALIDITY, PERFORMANCE OR INTERPRETATION OF THIS SUBCONTRACT SHALL BE GOVERNED BY THE RELEVANT PROVISIONS OF THE MAIN CONTRACT OR, IN THE ABSENCE OF ANY PROVISIONS IN THE MAIN CONTRACT, BY THE LAW OF THE STATE OF TEXAS, WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAWS.

performed outside of Louisiana, and (3) a waiver of CMC's right to remedies pursuant to Louisiana Revised Statute section 9:2779.[3]

Disagreements arose between OPE and CMC. On July 20, 1998, OPE filed a Demand for Arbitration with the Houston office of the American Arbitration Association. After the second day of arbitration, OPE and CMC agreed to temporarily suspend the proceedings and attempt settlement through mediation. Mediation proved unsuccessful. OPE notified CMC that it wished to resume arbitration proceedings, but CMC refused. On February 18, 2000, CMC filed suit in the 32nd Judicial District Court for the Parish of Terrebonne, Louisiana, seeking damages and a declaration that the subcontract's arbitration clause and choice-of-law provision violated public policy and were void.

OPE responded by filing a petition in the Southern District of Texas to compel arbitration. The district court granted OPE's motion on September 29, 2000. The district court ordered CMC to submit to arbitration in Houston, Texas and ordered that the pending Louisiana suit be stayed. The district court determined that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, preempts section 9:2779 of the Louisiana Revised Statues to the extent that the Louisiana statute prohibits the parties from enforcing out-of-

_____

[3] Clause 23.13 states: "The Parties stipulate and agree that the portions of the Subcontract Work shall be performed outside of Louisiana and that Subcontract Work is in interstate commerce and, therefore, SUBCONTRACTOR specifically waives all redress to and rights and remedies under Louisiana Revised Statutes Section 9:2779."

state choice-of-venue provisions. The court ordered CMC to submit to arbitration in Houston under the terms of the agreement. CMC timely appealed.

II.

This court reviews a district court's grant of a motion to compel arbitration *de novo*. *Local 1351 Int'l Longshoremen's Ass'n. v. Sea-Land Serv., Inc.*, 214 F.3d 566, 569 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 771 (2001). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Courts conduct a two-step inquiry when deciding whether parties must submit to arbitration. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). The first step is to decide whether the parties agreed to arbitrate their dispute. *See id*. at 258. "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id*. To resolve these issues, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Id*. (quoting *First Options of*

4

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924 (1995)). Once a court determines that the parties agreed to arbitrate, the court must assess "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

Both parties agree that the first step of the above inquiry is met. CMC relies on the second step of the inquiry to argue that the arbitration agreement is foreclosed by Louisiana statute. Section 9:2779 of the Louisiana Revised Statutes states in relevant part:

> A. The legislature finds that, with respect to construction contracts, subcontracts, and purchase orders for public and private works projects, when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.
>
> B. The legislature hereby declares null and void and unenforceable as against public policy any provision in a contract, subcontract, or purchase order, as described in Subsection A, which either:
> (1) Requires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state; rather, such actions or proceedings may be pursued in accordance with the Louisiana Code of Civil Procedure or other laws of this state governing similar actions.

LA. REV. STAT. ANN. § 9:2779.

The FAA declares written provisions for arbitration "valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *see also Moses*, 460 U.S. at 24 ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.").

In *Southland*, franchisees filed suit in California state court alleging violations of the California Franchise Investment Law. *See* 465 U.S. at 4 (citing CAL. CORP. CODE ANN. § 3100 *et seq*. (West 1977)). Southland petitioned to compel arbitration pursuant to an arbitration clause in the franchise agreement. *Id*. The California Supreme Court held that the Franchise Investment Law required judicial consideration of claims brought under the statute. *Id*. at 5. The Supreme Court reversed, holding that the statute was preempted by the FAA. *See id.* at 16. The Court explained that "[i]n creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Id*. at 16 (footnotes omitted).

In *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687-

6

89 (1996), the Court held that the FAA preempted a Montana statute which rendered arbitration clauses unenforceable unless "'typed in underlined capital letters on the first page of the contract.'" *Id*. at 684. (quoting MONT. CODE ANN. § 27-5-114(4)(1995)). The court stated that

> [b]y enacting § 2 [of the FAA], we have several times said, Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed "upon the same footing as other contracts." Montana's [statute] directly conflicts with § 2 of the FAA because the State's law conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. The FAA thus displaces the Montana statute with respect to arbitration agreements covered by the Act.

*Id*. at 687 (citations omitted); *see also Perry v. Thomas*, 482 U.S. 483, 492, n.9 (1987)("A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2.").

Although the Fifth Circuit has never determined whether the FAA preempts section 9:2779, we have held that the FAA preempts other state laws that preclude parties from enforcing arbitration agreements. In *Commerce Park v. Mardian Construction Co.*, 729 F.2d 334, 337 (5th Cir. 1984), we held that the FAA preempted provisions in the Texas Deceptive Trade Practices Act ("DTPA") that required parties to submit to a judicial forum. The DTPA stated that "[a]ny waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void . . .."

TEX. BUS. & COM. CODE ANN. §§ 17.42 & 17.59 (Vernon Supp. 1982). Commerce Park argued that the DTPA prohibited litigants from resolving their claims under the statute through arbitration. We rejected Commerce Park's argument and concluded that if the DTPA provisions were given effect, the statute would abrogate § 2 of the FAA in violation of the supremacy clause. *See id*. at 338; *see also Ommani v. Doctor's Assocs., Inc.*, 789 F.2d 298, 299-300 (5th Cir. 1986)("[T]o the extent that [the DTPA] provides a remedy parallel to and often overlapping claims that may fall within the scope of the Federal Arbitration Act, we find the *Southland* decision clearly apposite.")

In *Miller v. Public Storage Management, Inc*., 121 F.3d 215, 217, 219 (5th Cir. 1997), the plaintiff's employer terminated the plaintiff for failing to return to work eight months after an on-the-job injury. The plaintiff argued that she should not have been compelled to arbitrate her state claims for retaliation under the Texas Labor Code because Texas law does not favor arbitration for personal-injury or workers' compensation claims. Applying *Southland*, we held that the FAA preempts conflicting state anti-arbitration laws. *Id.* at 219.

Section 9:2779 declares "null and void and unenforceable as against public policy any provision in [certain construction subcontracts] . . . which [] [r]equires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of

[Louisiana]."   LA. REV. STAT. ANN. 9:2779(B)(1).   The statute directly conflicts with § 2 of the FAA because the Louisiana statute conditions the enforceability of arbitration agreements on selection of a Louisiana forum; a requirement not applicable to contracts generally.  *See Doctor's Assocs.*, 517 U.S. at 687.   The FAA therefore preempts the Louisiana statute, which prohibits the arbitration agreement between CMC and OPE.   Accordingly, we conclude that the district court properly compelled the parties to submit to arbitration.[4]

AFFIRMED

---

[4]We find CMC's remaining choice of law arguments without merit.