IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 6, 2008

Charles R. Fulbruge III
Clerk

No. 07-60813
Summary Calendar

AMERIPRISE FINANCIAL SERVICES, INC

Plaintiff - Appellee

v.

ALFRED D ETHEREDGE

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi, Jackson
USDC No. 3:07-CV-404

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant Alfred D. Etheredge appeals the district court's orders denying his requests to conduct discovery and granting the motion to compel arbitration filed by plaintiff-appellee Ameriprise Financial Services, Inc. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2001, Alfred Etheredge opened a securities brokerage account with Ameriprise Financial Services, Inc. ("Ameriprise").[1] On May 14, 2007, Etheredge filed suit against Ameriprise and his Ameriprise broker, James McKennon, in the Circuit Court of Lincoln County, Mississippi. In his suit, Etheredge asserted claims for negligence, breach of fiduciary duty, breach of contract, and fraud based on alleged misrepresentations and mismanagement regarding Etheredge's brokerage account at Ameriprise.

On July 16, 2007, Ameriprise filed a complaint in federal district court seeking to compel Etheredge to submit the claims pending in state court to arbitration. Attached to Ameriprise's complaint were copies of an Advantage IRA Application (the "IRA Application") and an American Express Financial Advisors SPS Advantage Service Agreement (the "Service Agreement"), in which the parties seemingly agreed to arbitrate all disputes arising from their financial relationship. Specifically, the IRA Application states in the second paragraph directly above Etheredge's signature that his account is "governed by a predispute arbitration clause which is found in Section 13 of the [Service Agreement]," and that he, as the customer, "acknowledges receipt of the predispute arbitration clause." The Service Agreement also reflects Etheredge's signature directly below the statement, "This Agreement contains a pre-dispute arbitration clause in Paragraph 13, which begins on Page 4." At Paragraph 13 of the Service Agreement, the arbitration provision provides, in relevant part:

> Any controversy arising out of, or relating to [Etheredge's] account, to transactions with [Ameriprise] or [Ameriprise's] agents and/or employees, or to this Agreement or the breach thereof, shall be settled by arbitration and conducted pursuant to the Federal

---

[1] Ameriprise is a financial services firm and a member of various self-regulatory organizations, including the New York Stock Exchange and the National Association of Securities Dealers.

> Arbitration Act before the National Association of Securities Dealers Inc., the Midwest Stock Exchange, the New York Stock Exchange, the American Stock Exchange, or the Municipal Securities Rulemaking Board as [Etheredge] may elect.

On July 31, 2007, Ameriprise filed a motion to compel arbitration of Etheredge's claims, urging that: (1) a written agreement to arbitrate existed between Ameriprise and Etheredge, evidenced by the IRA Application and the Service Agreement; (2) the Federal Arbitration Act (the "FAA") governed the enforcement of the arbitration clause; (3) all of Etheredge's claims alleged in his state court action were within the scope of the arbitration clause in the Service Agreement; and (4) no external federal policy or statute rendered Etheredge's claims non-arbitrable. In opposition to the motion to compel, Etheredge argued that the arbitration clause was "invalid and unenforceable due to fraud in the factum, fraud in the inducement, lack of mutuality, and unconscionability." Then, Etheredge asserted that he should be permitted "discovery prior to any ruling" on the motion to compel. In particular, Etheredge requested a discovery period "to conduct a handwriting and/or signature analysis, obtain information relating to the circumstances involved in the production of said arbitration clause, and ascertain other documentation and information relating to the arbitration clause in question."

On September 17, 2007, the district court denied Etheredge's request for discovery, stating that Etheredge did not reasonably require discovery to present his position as to the validity of the arbitration agreement. The district court specifically noted that Etheredge "is certainly aware of the circumstances in which he signed the subject arbitration agreement, and of the terms and appearance of the agreement itself," and that although he may claim to want sufficient time to have a signature analysis performed, "he has not denied that

he signed the arbitration agreement." The district court then allowed Etheredge five additional days to respond to the motion to compel arbitration.

In his supplemental response to the motion to compel, Etheredge again asserted that the arbitration clause was invalid and that he would like to conduct discovery, including a handwriting analysis. Etheredge attached an affidavit, in which he stated that he did "not recall at any time signing or filling out" the IRA Application or Service Agreement. On October 2, 2007, the district court once again denied the request for discovery, stating that Etheredge "has failed to suggest how discovery would aid him in crafting a response to [Ameriprise's] motion." Thereafter, the district court granted the motion to compel arbitration. This timely appeal followed.

## II. DISCUSSION

Etheredge only argues on appeal that the district court abused its discretion in denying him his requests for discovery prior to its granting of Ameriprise's motion to compel arbitration. Etheredge contends that because he "does not recall signing or executing an arbitration agreement," limited discovery was warranted to determine the authenticity and validity of the agreement to arbitrate and the circumstances surrounding its purported execution. "We review a district court's discovery decisions for abuse of discretion and affirm such decisions unless they are clearly unreasonable or arbitrary." Patterson v. Mobil Oil Corp., 335 F.3d 476, 492 n.15 (5th Cir. 2003) (citing Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 876 (5th Cir. 2000)).

To determine whether parties should be compelled to arbitrate a dispute, courts perform a two-step inquiry. Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004). "First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable." Id. (quoting R.M. Perez & Assocs., Inc. v. Welch, 960 F.2d

534, 538 (5th Cir. 1992)). The first inquiry requires consideration of two issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. Id. (emphasis added) (citing Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996)). Under this rubric, Etheredge argues that discovery was necessary to prove the existence of a valid agreement to arbitrate between himself and Ameriprise. We disagree.

In his requests for discovery in the district court, Etheredge contended that he should be permitted to conduct discovery "in order to obtain information in support of his claim that the subject arbitration clause is invalid" due to fraud in the factum, fraud in the inducement, lack of mutuality, and unconscionability. However, Etheredge never suggested what evidence relevant to these defenses he suspected to find through discovery. Indeed, the only specific discovery request that Etheredge submitted to the district court was for a handwriting analysis. He maintained that a handwriting analysis was necessary because he did not "recall" signing or executing the document. However, as the district court noted in its first order denying the discovery request, Etheredge never denied that the signatures on the IRA Application or the Service Agreement were his own.[2] Nor did he even suggest circumstances which might lead one to doubt that those signatures were his, such as forgery by Ameriprise or one of its brokers. Moreover, because the documents in question were attached to Ameriprise's complaint, Etheredge was in possession of these documents at least two months prior to his response to the motion to compel. If in fact Etheredge questioned whether the signatures were his own, nothing precluded him from

---

[2] It is telling that even after the district court pointed out in its first order that Etheredge did not deny signing the documents in question, Etheredge merely asserted in his affidavit attached to his supplemental response that he did not "recall" signing the documents.

going forward with the handwriting analysis.[3] Thus, under these circumstances, the district court did not abuse its discretion in denying Etheredge's requests for discovery prior to granting Ameriprise's motion to compel arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 22 (1983) (providing that in determining whether to compel arbitration, the FAA requires "an expeditious and summary hearing, with only restricted inquiry into factual issues.").

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the orders of the district court denying the requests for discovery and compelling arbitration.

---

[3] Etheredge responds in his reply brief that, according to the Code of Ethics for Graphologists, when a graphologist is giving an opinion based upon an examination of a photocopy of a document, his opinion is to be qualified as such, until examination of an original can be made. Thus, according to Etheredge, discovery was necessary to obtain the original documents in question. Because Etheredge did not base his request for discovery in the district court on this "originals versus photocopies" distinction, we do not consider it now in determining whether the district court abused its discretion in denying the discovery request. See Langhoff Props., L.L.C. v. B.P. Prods. N. Am., 519 F.3d 256, 261 n.12 (5th Cir. 2008) ("Generally, arguments not raised in the district court are waived [on appeal].").